# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

VALENCIA EVERHART,

    Plaintiff,

v.

CREDIT VISION, INC.,

    Defendant.

Case No. 1:20-cv-670
JUDGE DOUGLAS R. COLE
Magistrate Judge Bowman

## OPINION AND ORDER

Credit Vision, a debt collector seeking to collect from Valencia Everhart, informed credit reporting agencies of a debt she allegedly owed without also reporting that she disputed the debt. That violated the Fair Debt Collection Practices Act (FDCPA). She sued, sought default against Credit Vision, and now seeks default judgment against it, including both statutory and actual damages. In her Report & Recommendation, the Magistrate Judge concludes that the Court should grant the motion in part and, at least if Everhart fails to provide sufficient evidence supporting actual damages, deny it in part. The Court **ADOPTS** the R&R (Doc. 9). And, having now heard Everhart's damages evidence, the Court **GRANTS** Everhart's Motion for Default Judgment (Doc. 8) as to her statutory damages but **DENIES** it as to her request for actual damages. The Court also **DENIES** her Motion for Attorney Fees (Doc. 11) but will allow her to supplement that motion as described below.

## BACKGROUND

**A. The Complaint**

Everhart's Complaint succinctly lays out the relevant facts, which the Court quotes:

- Defendant is attempting to collect a consumer type debt allegedly owed by Plaintiff to Appliance Warehouse in the amount of $1,317.00 ("the alleged Debt").
- Plaintiff disputes the alleged Debt.
- On March 23, 2019, Plaintiff obtained her Trans Union credit disclosure and noticed Defendant reporting the alleged Debt.
- On or about June 5, 2019, Plaintiff sent Defendant a letter disputing the alleged Debt.
- On August 7, 2019, CBC Innovis, obtained Plaintiff's Trans Union credit file.
- On August 7, 2019, Plaintiff obtained her Trans Union credit disclosure, which showed that Defendant failed or refused to flag the account reflected by the alleged Debt as disputed, in violation of the FDCPA.

(Doc. 1, #2 (numbering changed)). As a result, Everhart sued Credit Vision and claims "pecuniary and emotional damages." (*Id.* at #3).

**B. Early Procedural History**

Everhart applied for the clerk to enter default against Credit Vision, noting that:

- Plaintiff filed the above-captioned action on August 27, 2020.
- On November 20, 2020, Plaintiff served Credit Vision, Inc.
- Pursuant to Fed.R.Civ.P. 12(a)(1)(A)(i), Defendant's answer to this action was due on December 11, 2020.
- Defendant has failed to plead or otherwise defend against this action and is now in default.

(Doc. 6, #15 (numbering changed) (citations omitted)). The clerk entered default against Credit Vision. (Doc. 7). After default, Everhart moved for default judgment, asking for "$5,000 for Plaintiff's actual damages and $1,000 in statutory damages, for a total of $6,000 in damages, plus costs and attorney's fees," to compensate her for "pecuniary and emotional distress." (Doc. 8, #22–23).

**C.     The R&R**

The Magistrate Judge reviewed Everhart's Motion for Default Judgment. She explains that Everhart asks for both statutory damages and "actual damages based upon emotional distress." (Doc. 9 at #25). But, the Magistrate Judge says, "conclusory assertions that [Everhart] suffered emotional distress as a result of Defendant's action (or inaction) are insufficient to support her claim for emotional distress damages absent additional proof." (*Id.* at #26). Thus, the Magistrate Judge recommends:

1. Plaintiff's motion for the entry of default judgment (Doc. 8) should be **GRANTED IN PART**;
2. Within fourteen (14) days of the date of this R&R, Plaintiff should be directed to supplement the record with an Affidavit or other additional proof to support an award of the claimed pecuniary and/or emotional distress damages. If Plaintiff fails to supplement the record, the request for damages should be denied based on the failure of proof.

(*Id.* at #27 (emphasis original)). Along the way, she highlighted a question of standing:

> In *TransUnion LLC v. Ramirez*, 141 S.Ct. 2190 (2021), the Supreme Court held that the mere presence of an inaccuracy in an internal credit file, if it is not disclosed to a third party, causes no concrete harm under the Fair Credit Reporting Act as required to confer Article III standing. However, given the lack of Sixth Circuit case law as to what might

3

> satisfy standing under the different statutory scheme of the FDCPA, the Court will assume that standing exists.

(*Id.* at #26 n.3).

### D. Later Procedural History

In response to the R&R, Everhart filed a declaration further substantiating her request for damages. (Doc. 10). Still, the Magistrate Judge's note about standing caught the Court's eye. So the Court directed Everhart

> to file a brief addressing whether she has standing to pursue this action. Specifically, Plaintiff should brief whether she has suffered an injury-in-fact under the Sixth Circuit's decisions in *Garland v. Orlans, PC*, 999 F.3d 432 (6th Cir. 2021), and *Krueger v. Experian Info. Sols., Inc.*, No. 20-2060, 2021 WL 4145565 (6th Cir. Sept. 13, 2021), as well as the Supreme Court's decision in *TransUnion LLC v. Ramirez*, 141 S.Ct. 2190 (2021).

(11/1/21 Not. Ord. (cleaned up) (citation edited)). Later, the Court held a hearing where it "heard arguments of counsel and testimony of Plaintiff Valencia Everhart" regarding damages. (3/2/22 Min. Entry). After, Everhart moved for attorneys' fees. (Doc. 11). A little under a year later, the Court noted that Everhart had still not filed the requested brief on standing:

> On 11/1/21, this Court ordered plaintiff to file a brief addressing whether she has standing to pursue this matter. On 3/22/22, this Court also held a hearing on the damages, if any, plaintiff suffered in connection with the credit reporting issue she alleges in her complaint. At that hearing, the Court noted that plaintiff had yet to file the requested brief. As of today, plaintiff has yet to file the requested brief. Accordingly, the Court orders plaintiff to file a brief addressing whether and how, under case law like that cited in the Court's 11/1/21 Notation Order, plaintiff has standing in this action. If plaintiff fails to file the requested brief on or before 2/28/23, this Court will dismiss the action for failure to prosecute.

4

(2/8/22 Not. Ord. (cleaned up)). Everhart filed that brief. (Doc. 14). With no other responses expected, the motions are ripe for review.

## LEGAL STANDARD

The Magistrate Judge advised the parties that failing to object to the R&R within 14 days could result in forfeiture of rights on appeal, which includes the right to District Court review. (*See* Doc. 9 at #28); *see also Thomas v. Arn*, 474 U.S. 140, 152 (1985) ("There is no indication that Congress, in enacting § 636(b)(1)(C), intended to require a district judge to review a magistrate's report to which no objections are filed."); *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019) (noting "fail[ure] to file an objection to the magistrate judge's R&R … is forfeiture"); 28 U.S.C. § 636(b)(1)(C). Neither party has objected to the R&R.

Still, the advisory committee notes to Fed. R. Civ. P. 72(b) suggest that the Court still must "satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *See also Redmon v. Noel*, No. 1:21-cv-445, 2021 WL 4771259, at *1 (S.D. Ohio Oct. 13, 2021) (citing cases). Consistent with that admonition, and as explained in more detail below, the Court has reviewed the R&R and determined that it does not contain "clear error on its face." Fed. R. Civ. P. 72(b) (advisory committee notes).

Additionally, federal courts must be mindful of the limitations on their jurisdiction. Consistent with that, courts must raise sua sponte jurisdictional issues (such as standing) when they notice them . *CMS N. Am., Inc. v. De Lorenzo Marble & Tile, Inc.*, 521 F. Supp. 2d 619, 632 (W.D. Mich. 2007) ("Not only *may* a court raise

5

subject-matter jurisdiction *sua sponte,* it *must.*") (citing *Clarke v. Mindis Metals, Inc.,* No. 95–5517, 99 F.3d 1138, 1996 WL 616677, at *3 (6th Cir. Oct. 24, 1996) ("Neither party has raised the jurisdictional issue this case presents, but it is axiomatic that we *must* raise issues of subject-matter jurisdiction *sua sponte.*") (emphasis original)).

## LAW AND ANALYSIS

Because the clerk entered default and the Court considers a motion for default judgment, "the complaint's factual allegations regarding liability are taken as true, while allegations regarding the amount of damages must be proven." *Wood v. Bronzie*, No. 1:20-cv-231, 2020 WL 4015247, at *1 (S.D. Ohio July 16, 2020) (internal quotation marks and citations omitted). Upon reviewing the record, the Court agrees with the Magistrate Judge that the facts, taken as true, support a finding of liability against Credit Vision for violating the Fair Debt Collection Practices Act.

The FDCPA forbids debt collectors from "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." 15 U.S.C. § 1692e(8). Taking the Complaint's allegations as true, Credit Vision violated this provision—despite Everhart informing Credit Vision that she disputed the Appliance Warehouse debt, "her Trans Union credit disclosure … showed that Defendant failed or refused to flag the account reflected by the alleged Debt as disputed." (Doc. 1, #2). That establishes a violation.

But two questions remain. First, the Court must determine whether Everhart has standing to pursue this action in the first instance. Then, if she does, the Court

6

must assess the damages, if any, to which she is entitled. The Court addresses the questions in that order. Then, the Court turns to Everhart's Motion for Attorneys' Fees. (Doc. 11).

### A. Everhart Has Standing.

In light of recent Supreme Court and Sixth Circuit decisions—*TransUnion*, *Garland*, and *Krueger*—the Court asked Everhart to submit a brief explaining why she has standing. Now, having reviewed her briefing, the Court concludes that she does.

#### 1. *TransUnion*

Let's start with *TransUnion*. There,

> a class of 8,185 individuals sued TransUnion, a credit reporting agency, in federal court under the Fair Credit Reporting Act. The plaintiffs claimed that TransUnion failed to use reasonable procedures to ensure the accuracy of their credit files, as maintained internally by TransUnion. For 1,853 of the class members, TransUnion provided misleading credit reports to third-party businesses. … The internal credit files of the other 6,332 class members were *not* provided to third-party businesses during the relevant time period.

*TransUnion,* 141 S.Ct. at 2200. The Supreme Court held that plaintiffs lack standing unless they have suffered a concrete harm that "has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts—such as physical harm, monetary harm, or various intangible harms including (as relevant here) reputational harm." *Id*. The Court concluded the 1,853 class members as to whom TransUnion had provided misleading information to third parties had standing. *Id*. But the other 6,332 did not. *Id*.

7

Turn now to Everhart's brief. In her discussion of *TransUnion*, Everhart cites *Ewing v. MED-1 Sols., LLC*, 24 F.4th 1146 (7th Cir. 2022), a case with very similar facts to this one. There, plaintiffs

> disputed certain debts they allegedly owed to debt-collection companies. Under the Fair Debt Collection Practices Act ("FDCPA"), debt-collection companies must report such disputes to credit reporting agencies, *see* 15 U.S.C. § 1692e(8), but the companies here failed to do so.

*Id.* at 1149. The Seventh Circuit held that those plaintiffs

> resemble the prevailing subclass in *TransUnion*, who demonstrated that misleading information about them had been disseminated to third parties; and so suffered a concrete injury in fact under Article III.

*Id.* at 1153 (internal quotation marks and citation omitted). Just like in *Ewing*, here a debt collector (Credit Vision) disseminated misleading information to a third-party credit reporting agency (TransUnion), by failing to report to it that a disputed debt was disputed. That makes Everhart more like the 1,853 class members in *TransUnion* who had standing, rather than the 6,332 who did not.

### 2. *Garland* and *Kreuger*

Now consider *Garland*. There,

> a law firm … sent a letter on law-firm letterhead to [plaintiff]. The letter said … while the foreclosure process [on plaintiff's house] had begun, foreclosure prevention alternatives might still be available if the Garlands reached out to [the law firm's client, a mortgage servicer]. … [Plaintiff] says that the letter confused him because he was unsure if it was from an attorney. And he says that the letter raised his anxiety by suggesting that an attorney may have conducted an independent investigation and substantive legal review of the circumstances of his account, such that his prospects for avoiding foreclosure were diminished. … [Plaintiff] alleges that [the law firm] sent a form of this letter to tens of thousands of homeowners and that it did so without having any attorney provide a meaningful review of the homeowners' foreclosure files, so the communications deceptively implied they were

8

> from an attorney. … [T]he Fair Debt Collection Practices Act (FDCPA) … prohibit[s] misleading debt-collection communications that falsely represent or imply they are from an attorney.

*Garland*, 999 F.3d at 435–36. The Sixth Circuit held that the plaintiff did not have standing because "confusion and anxiety" do not have "a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit." See *id.* at 437, 439 (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)).

Meanwhile in *Kreuger*,

> the servicer for [plaintiff's] mortgage loan ... continued to tell credit-reporting agencies that the loan was past due—even though [defendant] knew that the loan had been discharged in bankruptcy. [Plaintiff's] credit score hovered in the low 500s as a result. After unsuccessfully seeking for months to have [defendant] correct its reports, [plaintiff] brought this suit under the Fair Credit Reporting Act ["FCRA"], alleging that [defendant] had negligently and willfully breached its duties under the Act.

*Krueger*, 2021 WL 4145565 at *1. Note that the FCRA only "requires consumer reporting agencies to 'follow reasonable procedures to assure maximum possible accuracy of consumer reports.'" *Spokeo*, 578 U.S. at 335 (citing 15 U.S.C. § 1681e(b)). So it is perhaps open to question whether mere reporting itself would have sufficed to show an injury that would create standing under the statute. But the Sixth Circuit held that the plaintiff had standing anyway, because he showed he suffered a different concrete injury—his low credit forced him to put off his plans to purchase a new car. *Krueger*, 2021 WL 4145565 at *2.

Everhart's case is materially different from those two cases. Unlike in *Garland*, Everhart's injury has a common-law analogue. She's suing because misleading information about her has been disseminated to a third-party; that's closely

9

analogous to defamation. And because, unlike the FCRA, the FDCPA "flatly prohibits reporting of information that the collector knows or should know to be false," there is no question that a knowingly false report is a statutory violation. (Doc. 14, #122). This, combined with the fact that the protection against false reporting has a close common-law analogue (defamation), means Everhart need not show any other concrete harms like that in *Kreuger*.

In short, Everhart has standing.

**B.     Everhart Is Entitled To Statutory Damages, But Not Actual Damages.**

A debt collector who violates the FDCPA is liable to the person he harmed for:

- any actual damage sustained by such person as a result of such failure
- such additional damages as the court may allow, but not exceeding $1,000.

15 U.S.C. § 1692k(a)(1)–(a)(2)(A) (numbering changed) (cleaned up). The Court will address the two types of damages in reverse order.

**1.     Statutory Damages.**

In determining the amount of statutory damages, "the court shall consider, among other relevant factors: … the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." 15 U.S.C. § 1692k(b)–(b)(1). Courts do not always award the full statutory amount. *See Brown v. Halsted Fin. Servs., LLC*, No. 3:12-cv-308, 2013 WL 693168 (S.D. Ohio Feb. 26, 2013) (awarding $500 where a debt collector failed to identify itself and lied about legal status of debt during one phone call with plaintiff); *Jones v. DeVille Asset Mgmt., L.P.*, No. 3:18-cv-00524, 2020 WL 13540306

(W.D. Ky. Apr. 27, 2020) (awarding $500 where a debt collector failed to identify itself and lied about legal status of debt during one phone call with plaintiff); *Gilden v. Platinum Holdings Grp., LLC*, No. 1:18-CV-343, 2019 WL 590745, at *1 (S.D. Ohio Feb. 13, 2019) (awarding $500 where a debt collector lied that he was a lawyer and threatened litigation against plaintiff).

But courts do not shy from awarding the full statutory amount either. *See Gordon v. Enhanced Acquisitions LLC*, No. 14-13839, 2015 WL 7423809 (E.D. Mich. Nov. 23, 2015) (awarding $1000 where a debt collector left several voicemails threatening plaintiff's arrest); *Hett v. Bryant Lafayette & Assocs., LLC*, No. 10-cv-12479, 2011 WL 740460, at *1 (E.D. Mich. Feb. 24, 2011) (awarding $1000 where a debt collector called plaintiff several times to ask about and collect on his sister-in-law's debt); *Grimm v. GPG Processing, LLC*, No. 2:18-cv-1522, 2019 WL 4508921, at *2 (S.D. Ohio Sept. 19, 2019), *report and recommendation adopted,* No. 2:18-cv-1522, 2019 WL 4958073 (S.D. Ohio Oct. 8, 2019) (awarding $1000 where a debt collector called plaintiff six times in a month, lied about the status of the debt, and threatened her arrest); *Harding v. Check Processing, LLC*, No. 5:10-cv-2359, 2011 WL 1097642 (N.D. Ohio Mar. 22, 2011) (awarding $1000 where a debt collector revealed the status of plaintiff's debt to her mother and threatened plaintiff's arrest).

The noncompliance here is not as egregious as the conduct in the $1000 cases but is more serious than the conduct in the $500 cases. Like the debt collectors in the $1000 cases, Credit Vision has persistently disregarded the FDCPA. Everhart told Credit Vision in June 2019 that she disputed the Appliance Warehouse debt. (Doc. 1,

11

#2). At the damages hearing in March 2022, she informed the Court that it still appeared on her credit report. This persistence in reporting false information, across 3 years, is even greater than in most of the cited $1000 cases. But the nature of the noncompliance is different. Credit Vision did not violate multiple provisions of the FDCPA—just one. And it violated the FDCPA not by some affirmative acts of misrepresentation or threat directed at the plaintiff, but by failing to carry out a duty to correct false information. While the Court does not wish to minimize Everhart's suffering, this is different from being threatened with arrest or harassed about someone else's debt. Because the noncompliance here is more serious than the $500 cases but not quite as egregious as the $1000 cases, the Court **GRANTS** Everhart's Motion for Default Judgment as to her request for statutory damages, but will award her $750. The Court also **GRANTS** Everhart filing costs. *See, e.g.*, Mann v. Acclaim Fin. Servs., Inc., 348 F. Supp. 2d 923, 931 (S.D. Ohio 2004) (awarding full costs to a partially successful plaintiff suing under the FDCPA).

### 2. Actual Damages

"Under the FDCPA, 15 U.S.C. § 1692k(a)(1), 'any debt collector who fails to comply with [the FDCPA] with respect to any person is liable to such a person in an amount to the sum of ... any actual damages sustained by such person *as a result of such failure.*'" *Davis v. Creditors Interchange Receivable Mgmt., LLC*, 585 F. Supp. 2d 968, 971 (N.D. Ohio 2008) (emphasis added) (quoting 15 U.S.C. § 1692k(a)(1)).

The Magistrate Judge characterizes Everhart as "assert[ing] actual damages based upon emotional distress." (Doc. 9, #25). At the time of the writing of the R&R,

12

though, Everhart only offered "conclusory assertions that she suffered emotional distress as a result of Defendant's action (or inaction)" which were "insufficient to support her claim for emotional distress damages absent additional proof." (*Id.* at #26). Since then, Everhart has offered additional evidence, in the form of a declaration and testimony at a hearing. Taking the evidence as a whole, it still does not support a conclusion that Everhart "suffered emotional distress *as a result of* Defendant's action." (*Id.* (emphasis added)).

In her declaration, some of her testimony was more of the same—conclusory statements that she's suffering from "stress, anxiety, worry, frustration, embarrassment, humiliation and other forms of emotional distress … [causing] weight loss, headaches and loss of sleep from worrying about the inability to get [her] credit reports corrected." (Doc. 10, #29). But, as the Magistrate Judge concluded, "[t]his is not a case where the alleged conduct of the Defendant, taken as true, is so inherently degrading that a reasonable person would have suffered emotional distress." (Doc. 9, #26). The Court needs specific consequences caused by Credit Vision that inflicted the distress.

Everhart may have something for us—she suggests that she faced distress because she "was denied an application for an apartment *in part* due to Defendant's refusal to report the alleged debt as disputed." (Doc. 10, #29 (emphasis added)). She also says that she "had credit card applications denied on two occasions due *in part* to Defendant's refusal to report the alleged debt as disputed." (*Id.* (emphasis added)). Finally, she says she has "refrained from applying for credit until [she] can improve

13

my credit and financial situation. Defendant's refusal to report that [she] dispute[s] the alleged debt is affecting [her] ability to obtain credit." (*Id.*)

But she was careful to caveat all these conclusions for a reason. At the damages hearing, she related the following: apparently, an employee at the apartment complex which denied her application explained that the disputed debt on her credit score was *one* of the reasons that her applications was denied. When pressed by the Court as to what the other reasons might be, Everhart mentioned her student debt . That student debt likely also discourages her from applying for further credit just as much as the disputed debt.

While the Court believes that Credit Vision's actions caused Everhart general distress, she has offered no evidence that those actions led to specific consequences which inflicted emotional distress on her, and the Court agrees with the Magistrate Judge that the conduct here was not so inherently degrading as to provide a basis for recovery on general allegations of emotional distress alone. Thus, the Court **DENIES** Everhart's Motion for Default Judgment as to her request for actual damages.

C.  **Attorney Fees**

"The starting point for determining the amount of a reasonable attorney fee is the 'lodestar' amount, which is calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 551 (6th Cir. 2008) (citing *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983). "The key requirement for an award of attorney fees is that 'the documentation offered in support of the hours charged must be of

14

sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation.'" *Id.* at 553 (6th Cir. 2008) (cleaned up) (quoting *United Slate, Tile and Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 n. 2 (6th Cir. 1984)). "These claimed hours, however, must not be excessive, redundant and unnecessary and those hours should be excluded by the court in determining an appropriate award." *Loan v. Prudential Ins. Co. of Am.*, 788 F. Supp. 2d 558, 565 (E.D. Ky. 2011) (cleaned up) (internal quotation marks and citations omitted). "An award based on the total number of hours reasonably expended on the litigation might, however, result in an excessive amount if the claimant has achieved only partial success." *Imwalle*, 515 F.3d at 552.

Everhart's Motion for Attorneys' Fees explains that she asks for a rate of $375 for Carl Schwartz, a Michigan attorney who apparently worked on the case with Richard Grabelman, who was hired as local counsel (though Schwartz never appeared before the court or applied to appear pro hac vice).

> The undersigned attorney [Grabelman] was retained by Credit Repair Lawyers of America ("CRLA") to be local counsel for Plaintiff. CRLA is one of the most prolific filers of consumer credit cases under the FCRA and has been such since 2008. Carl Schwartz is employed as an attorney at CRLA and is licensed in multiple jurisdictions. He has represented consumers and dedicated his career to consumer law cases since 2007. His hourly rate is $375. Mr. Schwartz has focused his skills and attention to helping consumers under the FCRA. Over the years, he has earned an excellent reputation and acquired an acumen for his work in these areas. Plaintiff's counsel's hourly rates are in line with the State Bar of Michigan's 2020 Economics of Law Practice Attorney Income and Billing Rate Summary Report. According to the SBM Report, the mean

15

> hourly rate for attorneys practicing in the field of consumer law is $336 per hour. Attorneys charging in the 75th percentile of this range charge $425 per hour.

(Doc. 11, #35 (cleaned up)). Everhart also asks for a rate of $160 for the paralegals who assisted her attorneys. (Doc. 11-1 at #38).

Based on the evidence she provides, these rates are reasonable. But the claimed hours are not. To start, Everhart was only partially successful; she obtained statutory damages but not actual damages. Much of the work captured in the motion was the failed effort to prove actual damages. Everhart got her statutory damages because Credit Vision defaulted and she proved she had standing. But her attorney wrote her standing brief well after filing the motion for attorneys' fees.

Moreover, a majority of the time entries appear to be irrelevant, confusing, duplicative, or excessively high. For example, many entries appear to involve work for a previous case against Credit Vision. (*Id.*). There, though, Everhart voluntarily dismissed the case, so she cannot be considered successful. *See* Notice of Voluntary Dismissal, *Everhart v. Credit Vision*, No 1:19-cv-957 (S.D. Ohio May 5, 2020). Thus, she cannot secure fees for that case. This wipes out a large portion of the entries.

But take some of those entries as examples. Credit Vision never answered in the previous case either. That didn't stop Everhart's counsel from charging her for "check[ing an] answer from Credit." (Doc. 11-1, #39). Thrice actually. And apparently each time took twelve minutes. These vague entries lend themselves well to duplication and inflation. Another example: two entries both say a paralegal "checked on refiling of the case." (Doc. 11-1, #40). What does that mean? How are the two

entries different? Likewise, it took nearly three hours to draft a five-page motion for attorneys' fees whose content is likely identical to previous filings, given that an opinion ruling for Mr. Schwartz's client in a previous case uses much of the precise language included in this motion. *See Greene v. Equifax Info. Servs., LLC*, No. 19-CV-11094, 2021 WL 5444768 (E.D. Mich. Mar. 15, 2021). Note too that Everhart relies on that case to support her argument for attorneys' fees, but there the awarded fees were half of what's being requested here. Eleven thousand dollars for prosecuting a default judgment with minimal filings strikes the Court as potentially excessive.

In short, given that Everhart is only partially successful here and the motion for attorneys' fees includes an invoice that contains time entries that appear either unreasonable or irrelevant, the Court **DENIES** Everhart's Motion for Attorney Fees (Doc. 11). That said, the Court will grant Everhart thirty-days' leave to submit a new motion for the Court's consideration, addressing the shortcomings identified above.

## CONCLUSION

For the reasons above, the Court **ADOPTS** the R&R (Doc. 9). The Court **GRANTS** in part Everhart's Motion for Default Judgment (Doc. 8) as to her statutory damages, and **DENIES** it in part as to her request for actual damages. The Court also **DENIES** her Motion for Attorney Fees (Doc. 11), but **GRANTS LEAVE** to refile that motion. The Court **DIRECTS** the Clerk to enter judgment in the amount of $750 plus filing costs in favor of Plaintiff Valencia Everhart and against Defendant Credit Vision and **TERMINATE** this matter on the Court's docket.

**SO ORDERED.**

<u>March 23, 2023</u>
**DATE**

                                          **DOUGLAS R. COLE**
                                          **UNITED STATES DISTRICT JUDGE**

18